D. Maimon Kirschenbaum
Lucas Buzzard
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

Mariann Wang
CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, NY 10007
(212) 620-2600

*Attorneys for Named Plaintiffs, proposed
EPA Collective Action Plaintiffs, Proposed
NY EPA Class, and proposed NYCHRL
Class*

**UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

**ALLISON NAVAR, and
CAMILLE ROBERTSON, on
behalf of themselves and others
similarly situated,**

**COMPLAINT**

**Plaintiff,**

**DEMAND FOR JURY TRIAL**

**v.**

**WALSH CONSTRUCTION COMPANY
II, LLC, SKANSKA USA CIVIL
NORTHEAST, INC., and SKANSKA USA
BUILDING, INC.**

**Defendants.**
-------------------------------------------------------x

1.      Plaintiffs Allison Navar, and Camille Robertson, (collectively "Plaintiffs" or

"Class Representatives"), through their attorneys Joseph & Kirschenbaum LLP and Cuti

Hecker Wang LLP, bring this action to redress gender discrimination in their individual

capacities and on behalf of the three classes (the "EPA Collective," the "New York EPA

Class" and the "NYCHRL Class") defined below.  Upon non-confidential, non-privileged

information concerning themselves and their own acts, and upon information and belief,

Plaintiffs allege as follows:

## INTRODUCTION

2.      Defendants Walsh Construction Company II, LLC ("Walsh"), Skanska Civil Northeast, Inc., ("Skanska Civil") and Skansa USA Building, Inc. ("Skanska Building") (collectively, "the Company" or "Skanska/Walsh"), in their joint venture entitled Skanska/Walsh JV, have engaged in systematic, company-wide discriminatory treatment of female employees because of their gender.

3.      Skanska/Walsh discriminates against their female employees through, *inter alia:* (a) disparate treatment; (b) discriminatory policies, practices, and procedures in selection, pay, promotion, and advancement; and (c) retaliation.

4.      Skanska/Walsh also has known or should have known that its business practices - including but not limited to its pay, promotion, discipline, demotion, evaluation, and compensation practices - have an illegal disparate impact on female employees. Skanska/Walsh has failed to take adequate measures to rectify this disparate impact.

5.      The systemic gender discrimination described in this Complaint has been and is continuing in nature.

6.      The Class Representatives seek, on behalf of themselves and the classes they seek to represent, declaratory and injunctive relief; back pay; front pay; compensatory, nominal, and punitive damages; and attorneys' fees, costs, and expenses to redress Skanska/Walsh's pervasive and discriminatory employment policies, practices, and procedures.

## JURISDICTION AND VENUE

7.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Equal Pay Act, 29 U.S.C. 206(d) ("EPA").  This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

9.      Defendant Skanska USA Building, Inc. ("Skanska Building") is a Delaware Corporation licensed to business in the state of New York.

10.     Defendant Skanska USA Civil Northeast Inc. ("Skanska Civil") is a New York Corporation.

11.     Defendants Skanska USA Building, Inc. and Skanska USA Civil Northeast Inc. are USA divisions of Skanska AB a multinational company based in Sweden specializing in building development and construction.

12.     Defendant Walsh Construction Company II, LLC ("Walsh") is an Illinois Corporation licensed to do business in New York.  It is a division of The Walsh Group, a construction management and design-build firm, recognized as a top-15 contractor nationally.

13.     All Defendants have annual gross revenue in excess of $500,000.

14.     In or about March of 2015, Skanska Civil, Skanska Building, and Walsh entered into a Joint Venture Agreement (JVA) for the purpose of securing a bid and in fact performing construction work for an overall redevelopment of LaGuardia Airport (LGA) in New York.

15.     Under the terms of the JVA, Skanska Civil, Skanska Building, and Walsh agreed to jointly perform work relating to securing the bid and performing the work necessary for construction work relating to the redevelopment of LGA.  In June 2015, the bid was successful. Through an entity called LaGuardia Gateway Partners, of which Skanska is a shareholder, Skanska/Walsh secured construction work for the LGA redevelopment.

16.      Under the JVA, Skanska is entitled to 70% of the profits of the JV (35% to Skanska Civil and 35% to Skanska Building), and Walsh is entitled 30% of the profits.

17.     The JVA provides for an Executive Committee consisting of one-member from each of the three parties.

18.     Under the JVA, each member of the JVA is required to supply personnel for the project commensurate with its share of the profits, as decided by the Executive Committee.

19.     Skanska Building, as Managing Party of the JV, appoints a Project Officer, which must be approved by the Executive Committee.

20.     The Executive Committee must reach unanimous consent of each JVA member with respect to the hiring of all "Key Personnel," including the Project Officer.

21.     Labor agreements for the JV must be approved by the president of each individual JVA member.

22.     Each member of the JVA is required to contribute to the cash flow of the JV commensurate with its share of the profits under the JV.

23.     Plaintiff Allison Navar worked for Defendants from January 12, 2017 through May 4, 2018.  Plaintiff Navar's title as shown on the Skanska/Walsh Organizational Chart changed throughout her employment from Claims Management, to Claims Coordinator, to Contract Manager, respectively.  Plaintiff Navar's title on her offer letter and within the Walsh organization was Project Engineer.

24.     Plaintiff Camille Robertson was employed for Defendants as a Skanska Documents Control Manager and Documents Control Director from July 2016 until April 2018.

## EPA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiff brings the First Claim for Relief as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of the "EPA Collective," defined as all female employees who predominantly performed non-manual labor employed by Skanska Building, Skanska Civil, and/or Walsh at the Skanska/Walsh Joint Venture in LGA on or after the date that is three years before the filing of the Original Complaint in this case as defined herein, who (a) were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties; and/or (b) were not compensated equally to male employees who performed substantially similar work; and/or (c) were denied equal compensation to similarly situated male employees by being hired into positions at lesser grades than male employees who performed substantially similar work; and/or (d) were denied promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified males.

26.     Questions of law and fact common to the EPA Collective Plaintiffs as a whole include but are not limited to the following:

> (a) Whether Defendants unlawfully failed and continue to fail to compensate female employees at a level commensurate with similarly situated male employees;

(b) Whether Defendants unlawfully assigned and continue to assign female employees into positions graded at a lower pay and compensation scale to similarly qualified males;

(c) Whether Defendants' policy and practice of failing to compensate female employees on par with comparable male employees as a result of (a) and (b) violates applicable provisions of the EPA; and

(d) Whether Defendants' failure to compensate female employees on par with comparable male employees as a result of (a) and (b) was willful within the meaning of the EPA.

27.    Counts for violations of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs who opt in to this action, because the claims of Plaintiffs are similar to the claims of the EPA Collective Action Plaintiffs.

28.    Plaintiffs and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, titles, and duties; and (c) are subject to Defendants' common policy and practice of gender discrimination in (i) failing to compensate female employees on par with male employees who perform substantially equal work and/or hold equivalent levels and positions; (ii) failing to provide female employees with job classifications, grades, and titles commensurate with male employees who perform substantially equal work and/or have similar duties and responsibilities; (iii) hiring and assigning female employees into lower-level positions than male employees who perform substantially equal work and/or have similar or lesser experience and qualifications; and (iv) failing to provide female employees equal pay by denying opportunities for promotion and advancement to them comparable to those afforded to male employees who perform substantially equal work.

## NEW YORK EQUAL PAY ACT (N.Y. LAB. LAW § 194)
## CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring the Second Claim for Relief as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of the "New York EPA Class," defined as all female employees who predominantly performed non-manual labor employed by Skanska Building, Skanska Civil, and/or Walsh at the Skanska/Walsh Joint Venture in LGA on or after the date that is six years before the filing of the Original Complaint in this case as defined herein.

30.     Plaintiffs and the New York EPA Class have been subjected to systemic, Joint Venture-wide employment practices that disparately impact New York EPA Class Members and result in them being paid lower wages than their male counterparts for equal work on jobs that require equal skill, effort, and responsibility, and which are performed under similar working conditions.

31.     Such employment practices include, but are not limited to: (a) paying New York EPA Class Members less than their male counterparts who perform substantially similar job functions and/or duties; (b) paying New York EPA Class Members less than male employees who performed substantially similar work; (c) paying New York EPA Class Members less than similarly situated male employees by hiring them into positions at lesser grades than male employees who perform substantially similar work; (d) denying New York EPA Class Members promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified males; and (e) offering female candidates employment or promotion at lower salaries than those offered to similarly situated male candidates for employment or promotion.

32.     The differential in pay between New York EPA Class Members and their male counterparts is not based on a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or any other bona fide factor other than sex.

7

Moreover, the stark differential in pay between New York EPA Class Members and their male counterparts is not consistent with Defendants' business necessity.

33.     Although alternative, more objective and valid procedures are available to Defendants that would avoid such disparate impact on New York EPA Class Members in terms of compensation, Defendants have refused to adopt such alternative policies.

34.     The members of the New York EPA Class are readily ascertainable.  The number and identity of the New York EPA Class Members are determinable from Defendants' records.  The positions held and the rates of pay for each New York EPA Class Member are also determinable from Defendants' records.  For the purpose of notice and other purposes related to this Action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

35.     The proposed New York EPA Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.  Although the precise number of New York EPA Class Members is currently unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

36.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the New York EPA Class, and the relief sought is typical of the relief which would be sought by each member of the New York EPA Class in separate actions.  All the New York EPA Class Members, including Plaintiffs, were subject to the same systemic corporate practices of Defendants, as alleged herein, of failing to pay New York EPA Class Members on par with their similarly situated male counterparts, of hiring New York EPA Class Members into positions at lesser grades than males who perform substantially similar work, of denying New York EPA

8

Class Members promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified males, and/or of offering New York EPA Class Members lower salaries during hiring or promotion than similarly situated male candidates. Defendants' Joint Venture-wide policies and practices affected all New York EPA Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each New York EPA Class Member. Plaintiffs and other New York EPA Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

37.     Plaintiffs are able to fairly and adequately protect the interests of the New York EPA Class and have no interests antagonistic to the New York EPA Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment discrimination litigation, and who possess the experience and resources to litigate an employment discrimination class action of this size and complexity.

38.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage discrimination litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual New York EPA Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests

will be served by addressing the matter as a class action.  The adjudication of individual

litigation claims would result in a great expenditure of Court and public resources; however,

treating the claims as a class action would result in a significant saving of these costs.  The

prosecution of separate actions by individual members of the Class would create a risk of

inconsistent and/or varying adjudications with respect to the individual members of the Class,

establishing incompatible standards of conduct for Defendants and resulting in the impairment of

class members' rights and the disposition of their interests through actions to which they were

not parties.  The issues in this action can be decided by means of common, class-wide proof.  In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently

manage this action as a class action.

     39.    There are questions of law and fact common to the New York EPA Class which

predominate over any questions affecting only individual class members, including:

    (a)    Whether Defendants unlawfully failed and continue to fail to compensate New York EPA Class Members at a level commensurate with similarly situated male employees;

    (b)    Whether Defendants unlawfully assigned and continue to assign New York EPA Class Members into positions graded at a lower pay and compensation scale to similarly qualified males;

    (c)    Whether Defendants' policy and practice of failing to compensate New York EPA Class Members on par with comparable male employees as a result of (a) and (b) violates applicable provisions of the New York EPA; and

    (d)    Whether Defendants' failure to compensate New York EPA Class Members on par with comparable male employees as a result of (a) and (b) was willful within the meaning of the New York EPA.

     40.    A class action is superior to other available means for fairly and efficiently

adjudicating the claims of the Plaintiffs and members of the New York EPA Class.

**NEW YORK CITY HUMAN RIGHTS LAW (N.Y.C. ADMIN. CODE § 8-101 *et seq.*)
CLASS ACTION ALLEGATIONS**

41.     Plaintiffs bring the Third Claim for Relief as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of the "NYCHRL Class," defined as all female employees who predominantly performed non-manual labor employed by Skanska Building, Skanska Civil, and/or Walsh at the Skanska/Walsh Joint Venture in LGA on or after the date that is three years before the filing of the Original Complaint in this case.

42.     Plaintiffs and the NYCHRL Class have been subjected to a systemic pattern and practice of gender discrimination and employment policies that have had a continuing, unlawful disparate impact on them and their compensation because of their gender.

43.     Defendants permit and cultivate a work environment that discriminates against NYCHRL Class Members in compensation because of their gender.  The heads of nearly every organizational group at the Skanska/Walsh Joint Venture in LGA are men, and Defendants consistently rely on a number of Joint Venture-wide policies, practices, and procedures that result in lower compensation for NYCHRL Class Members than for their male counterparts.

44.     Such discriminatory policies, practices, and procedures include, but are not limited to: (a) paying NYCHRL Class Members less than their male counterparts who perform substantially similar job functions and/or duties; (b) paying NYCHRL Class Members less than male employees who performed substantially similar work; (c) paying NYCHRL Class Members less than similarly situated male employees by hiring them into positions at lesser grades than male employees who perform substantially similar work; (d) denying NYCHRL Class Members promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified males; and (e) offering female candidates for employment or promotion lower

salaries than those salaries offered to similarly situated male candidates for employment or promotion.

45.     Defendants' reliance on these Joint Venture-wide policies, practices, and procedures result in lower compensation for NYCHRL Class Members than similarly situated males.

46.     As a result of these policies, NYCHRL Class Members are subjected to continuing unlawful disparate treatment.  Moreover, even where Defendants' policies and procedures are facially neutral, the reliance on these policies has an ongoing disparate impact on NYCHRL Class Members.

47.     Defendants' management does not provide sufficient oversight or safety measures to protect against overt intentional discrimination in compensation or the disparate impact of facially neutral policies.   Where complaint and compliance policies exist, they lack meaningful controls or means of redress such that upper management may ignore, disregard, or minimize evidence of discrimination in the workplace.  Within this environment, NYCHRL Class Members who question Defendants' compensation policies or raise concerns about its practices are ignored or pushed out.

48.     Defendants' policies, practices, and procedures are not valid, job-related, or justified by business necessity.  Alternative, more objective and valid procedures are available to Defendants that would avoid such disparate impact on NYCHRL Class Members in terms of compensation.

49.     The members of the NYCHRL Class are readily ascertainable.  The number and identity of the NYCHRL Class members are determinable from Defendants' records.  The positions held and the rates of pay for each NYCHRL Class member are also determinable from

Defendants' records.  For the purpose of notice and other purposes related to this Action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

50.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.  Although the precise number of NYCHRL Class members is currently unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

51.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the NYCHRL Class, and the relief sought is typical of the relief which would be sought by each member of the NYCHRL Class in separate actions.  All the NYCHRL Class members, including Plaintiffs, were subject to the same systemic corporate practices of Defendants, as alleged herein, of failing to pay NYCHRL Class Members on par with their similarly situated male counterparts, of hiring NYCHRL Class Members into positions at lesser grades than males who perform substantially similar work, of denying NYCHRL Class Members promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified males, and/or of offering NYCHRL Class Members lower salaries during hiring or promotion than similarly situated male candidates.   Defendants' Joint Venture-wide policies and practices affected all NYCHRL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each NYCHRL Class member.  Plaintiffs and other NYCHRL Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

52.     Plaintiffs are able to fairly and adequately protect the interests of the NYCHRL

Class and have no interests antagonistic to the NYCHRL Class.  Plaintiffs are represented by

attorneys who are experienced and competent in both class action litigation and employment

discrimination litigation, and who possess the experience and resources to litigate an

employment discrimination class action of this size and complexity.

53.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of wage discrimination litigation

where individual class members lack the financial resources to vigorously prosecute a lawsuit

against Defendants.  Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions

engender.  Because the losses, injuries and damages suffered by each of the individual NYCHRL

Class members are small in the sense pertinent to a class action analysis, the expenses and

burden of individual litigation would make it extremely difficult or impossible for the individual

Class Members to redress the wrongs done to them.  On the other hand, important public

interests will be served by addressing the matter as a class action.  The adjudication of individual

litigation claims would result in a great expenditure of Court and public resources; however,

treating the claims as a class action would result in a significant saving of these costs.  The

prosecution of separate actions by individual members of the Class would create a risk of

inconsistent and/or varying adjudications with respect to the individual members of the Class,

establishing incompatible standards of conduct for Defendants and resulting in the impairment of

class members' rights and the disposition of their interests through actions to which they were

not parties.  The issues in this action can be decided by means of common, class-wide proof.  In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

54.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a)      The proper standards for proving a pattern and practice of discrimination by Defendants against NYCHRL Class Members under both a disparate treatment and disparate impact theory of liability.
>
> b)      Whether Defendants have engaged in unlawful, systemic gender discrimination through their policies, practices, and procedures affecting compensation and other terms and conditions of employment at the at the Skanska/Walsh Joint Venture in LGA.
>
> c)      Whether Defendants' failure to institute adequate standards, quality controls, implementation metrics or oversight of those policies, practices, and procedures violates the NYCHRL.
>
> d)      Whether Defendants have systematically, intentionally, or knowingly compensated NYCHRL Class Members less than their similarly-situated male counterparts.
>
> e)      Whether Defendants have systematically offered NYCHRL Class Members candidates for hiring and promotion lower salaries than similarly-situated male candidates.

55.     A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Plaintiffs and members of the NYCHRL Class.

## FACTS

### Allison Navar

56.     In or around December of 2016, Walsh offered Plaintiff Navar a position as a Project Engineer for the Skanska/Walsh JV and LGA.  Walsh offered a starting salary of $70,000.

57.     Plaintiff accepted the position.

58.     Shortly after beginning her employment, Plaintiff Navar shifted into a position that involved managing correspondence relating to claims made by Skanska/Walsh to the NY Port Authority.  At that point, her job duties were to manage, maintain and organize incoming and outgoing correspondence to maintain a proper evidentiary record and to research and layout entitlement positions related to project claims.

59.     Plaintiff Navar's title was "Claims Management."

60.     In performing her duties Plaintiff Navar worked side by side with Kevin Pfeiffer, whose formal job title was "Contract Manager."

61.     Plaintiff Navar and Kevin Pfeiffer's job duties were substantially the same.  They both started working with Sanska/Walsh within 6 months of each other.  They both were recent law graduates.  They both directly reported to the same supervisor, Jeff Twidwell, Deputy Commercial Director.  In fact, their assignments were communicated to the two of them directly by Jeff Twidwell, and the two of them decided among themselves, depending on each other's availability, but not on any different skill or experience, how to split the assignments.  Each did the other's equivalent work.

62.     Despite the substantial similarities of their job duties, Plaintiff Navar learned in about May of 2017 that Mr. Pfeiffer was paid more and had more favorable benefits (such as more paid time off and larger bonus) than her.

63.     In August of 2017, Plaintiff Navar confronted Mr. Twidwell directly about her unequal pay as compared to Mr. Pfeiffer. Ms. Navar was clear that Skanska/Walsh was violating the Equal Pay Act by paying Mr. Pfeiffer more than her.

64. Eventually, in October of 2017, Mr. Twidwell arranged for a meeting with himself, Plaintiff Navar, Business Group Leader Vince Piscopo, and a human resources representative to discuss Plaintiff Navar's concerns regarding gender-based pay disparity.

65. At that meeting, Mr. Twidwell and Mr. Piscoppo agreed to increase Plaintiff's pay by $10,000 and grant her additional PTO days to equal those of Mr. Pfeiffer.

66. During the discussions about Plaintiff Navar's salary, it was repeatedly told to Ms. Navar that her salary needed to be approved by Skanska as well.

67. Despite these adjustments, Plaintiff's pay was still significantly less than Mr. Pfeiffer's.  Plaintiff Navar brought this up in an email dated November 4, 2017 to Mr. Twidwell and Mr. Piscopo.

68. Skanska/Walsh not only failed to correct the pay inequality, but it retaliated swiftly against Ms. Navar in punishment for her complaints about unequal pay and gender discrimination.

69. Specifically, in November of 2017, Kevin Pfeiffer left the company.  Plaintiff Navar informed Mr. Twidwell that she wanted the full benefits of Mr. Pfeiffer's title as construction manager.

70. Plaintiff Navar was the obvious choice to replace Mr. Pfeiffer, as she had been doing exactly the same work as he had for close to a year, and her general background was nearly identical to his.

71. In December 2017, Skanska/Walsh informed Plaintiff Navar that it would not correct her pay disparity.

72. Only one month later, in January 2018, Skanska/Walsh (a) gave the position to which Plaintiff Navar was clearly suited to an outside individual, Jill Bramwell, and (b) changed

Plaintiff Navar's job title from Claims Management to Claims Coordinator, an apparent demotion.

73.    At that time, Plaintiff Navar began to report directly to Michael Castellon, of Skanska, Project Counsel to the Joint Venture.

74.    On January 19, 2018, Plaintiff Navar informed Mr. Twidwell and Castellon that she believed Defendants were retaliating against for her complaints about gender-based unequal pay by demoting her and denying her Mr. Pfeiffer's position for which she was clearly qualified.

75.    Mr. Twidwell and Mr. Castellon agreed at the meeting to give Ms. Navar the title of Contract Manager II. Ultimately, Ms. Navar's title on the company organizational chart was changed to "Contract Manager," the same title given to Jill Bramwell and Kevin Pfeiffer.

76.    Nevertheless, as a result of Skanska/Walsh's retaliatory actions against her, Plaintiff Navar was still employed in a lower ranked position than what she deserved, and her salary was still substantially less than what it should have been.

77.    As a result of Skanska/Walsh's discriminatory actions, Plaintiff resigned in May 2018.

78.    Almost immediately thereafter, Plaintiff found new employment at another company as Contract Manager where she currently has a base salary of $110,000.

**Camille Robertson**

79.    Plaintiff Robertson began working for Skanska as Documents Control Manager in July 2016.

80.    Plaintiff Robertson's staring salary was $82,000.

81.    In July 2017, Plaintiff Robertson was promoted to become a Documents Control Director, replacing Richard Pomaville.

82.     Despite the fact that Mr. Pomaville was paid $145,000, Plaintiff Robertson was paid only $100,000 for the same exact position and work.

83.     Ms. Robertson resigned in November 2017, informing Skanska that she believed that it was unfair that she was being paid significantly less than Mr. Pomaville.  Plaintiff Robertson informed Scott Silverman, Project Financial Officer, that she believed the pay disparity was gender-based.

84.     In response, Skanska rehired Plaintiff Robertson for an increased salary of $115,000, still well-less than Mr. Pomaville's salary.  During these discussions, Skanska informed Plaintiff Robertson that its decisions with respect to her salary required Walsh approval.

85.     Plaintiff Robertson also witnessed gender-based pay disparity and gender discrimination with respect to other individuals.

86.     For example, when Michael Schmack, Document Control Manager, left Skanska in late 2017, Plaintiff Robertson was assigned with finding his replacement.  Mr. Schmack earned $80,000.

87.     Plaintiff Robertson took out an ad for a Document Control Manager.

88.     In or about December of 2017, Plaintiff interviewed Samantha Little, a qualified candidate.  Ms. Little indicated on her application that she sought a salary of $80,000.

89.     Despite that (a) her predecessor made $80,000, and (b) she listed $80,000 as an expected salary on her application, Mr. Silverman suggested to Plaintiff Robertson that she offer Ms. Little a job at a $55,000 starting salary.  To justify the pay disparity, Skanska would change the title to Document Coordinator--a change in title only, as the job description was exactly the same as Mr. Schmack's.

90.     In addition, during the search for Mr. Schmack's replacement, Mr. Silverman insisted that Ms. Robertson consider another male candidate for the position who had some experience but was less qualified than Ms. Little and listed $100,000 as his starting salary requirement.  Ms. Robertson informed Mr. Silverman that the consideration of this male candidate at the $100,000 salary range would be a "slap in the face" to her because, as the Documents Control Director at that time, her salary was only $100,000, and this was a candidate for a lower position than hers.

91.     Plaintiff Robertson complained to Mr. Silverman about (a) the blatant discrimination in considering the male candidate, who was less-qualified and demanded more pay than Ms. Little, and (b) the discriminatory nature of the "low-ball offer" that Mr. Silverman suggested Plaintiff Robertson to Ms. Little.

92.     During these discussions, Mr. Silverman informed Plaintiff Robertson that Ms. Little's salary would ultimately need approval from Vince Piscopo at Walsh.

93.     Skanska ultimately instructed Plaintiff Robertson to offer Ms. Little a $63,000 salary with the Document Coordinator title, which Ms. Little accepted. The salary was considerably less than what Mr. Schmack was making, and the job title was arbitrarily lower than Mr. Schmack's.

94.     Plaintiff Robertson also became aware that Agnes Mendalka, an engineer, was paid significantly less than her male coworker with the same title, Hunter McCain.  In April of 2018, Plaintiff Robertson became so fed up with Defendants' behavior, including their discriminatory treatment of women, that she resigned.

95.     Plaintiff Robertson began new employment elsewhere as a Senior Construction Manager, and she earns a base salary of $157,000.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE EQUAL PAY ACT ("EPA"), 29 U.S.C. §§ 206(d), 216(b)**
**(On Behalf of Plaintiffs and EPA Collective Action Plaintiffs)**

96.     Plaintiffs, on behalf of themselves and the EPA Collective Action Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

97.     Defendants have discriminated against Plaintiffs and all EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 26 U.S.C. §§ 206 *et seq.*, by providing them with lower pay than similarly situated male colleagues on the basis of their gender even though Plaintiffs and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

98.     Defendants discriminated against Plaintiffs and all EPA Collective Action Plaintiffs by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the EPA.

99.     The differential in pay between male and female employees is/was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

100.     Defendants caused, attempted to cause, contributed to or caused the continuation of wage discrimination based on gender, in violation of the EPA.

101.     The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

102.    As a result of Defendants' conduct as alleged in this Complaint, Plaintiffs and all EPA Collective Action Plaintiffs have suffered and continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

103.    Plaintiffs, on behalf of themselves and the EPA Collective Action Plaintiffs, seek all legal and equitable remedies available for violations of the EPA, including unpaid compensation, liquidated damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF THE NEW YORK STATE EQUAL PAY ACT ("NY EPA"), N.Y. Lab. Law §§ 194, 198.
### (On Behalf of Plaintiffs and New York EPA Class)

104.    Plaintiffs, on behalf of themselves and members of the New York EPA Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

105.    Defendants have discriminated against Plaintiffs and all New York EPA Class Members within the meaning of the New York Equal Pay Act, N.Y. Lab. Law § 194, by providing them with lower pay than similarly situated male colleagues on the basis of their gender even though Plaintiffs and all others similarly situated performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

106.    Defendants discriminated against Plaintiffs and all New York EPA Class members by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the New York EPA.

107.    The differential in pay between male and female employees is/was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

108.    Defendants caused, attempted to cause, contributed to or caused the continuation of wage discrimination based on gender, in violation of the New York EPA.

109.    The foregoing conduct constitutes a willful violation of the New York EPA within the meaning of N.Y. Lab. Law 198(1-a).

110.    As a result of Defendants' conduct as alleged in this Complaint, Plaintiffs and all New York EPA Class members have suffered and continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

111.    Plaintiffs, on behalf of themselves and the New York EPA Class, seek all legal and equitable remedies available for violations of the New York EPA, including unpaid compensation, liquidated damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**PAY DISCRIMINATION**
**New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.***
**(On Behalf of Plaintiffs and the NYCHRL Class)**

112.    Plaintiffs, on behalf of themselves and members of the NYCHRL Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

113.    Defendants have discriminated against Plaintiffs and members of the NYCHRL Class by treating them differently from, and less preferably than, similarly-situated males by subjecting them to discriminatory pay in violation of the NYCHRL.

114.    Defendants' policies, practices, and procedures have produced a disparate impact on the Plaintiffs and the NYCHRL Class with respect to their compensation and the terms and conditions of their employment.

115.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Plaintiffs and the NYCHRL class, thus entitling Plaintiffs and members of the NYCHRL class to Punitive damages.

116.    As a result of Defendants continuous, ongoing discriminatory conduct alleged in this Complaint, Plaintiffs and the NYCHRL Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

117.    Plaintiffs, on behalf of themselves and the NYCHRL Class, seek all legal and equitable remedies available for violations of the NYCHRL, including compensatory damages, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper

118.    The New York City Commission on Human Rights will be notified and sent a copy of this Complaint.

**FOURTH CLAIM FOR RELIEF**
**EPA RETALIATION**
**29 U.S.C. §§ 215(a)(3), 216(b)**
**(On Behalf of Plaintiff Allison Navar)**

119.    Plaintiff Allison Navar realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

120.    Plaintiff Navar engaged in protected activity under the EPA by complaining to Defendants about gender discrimination in compensation.

121.    Because of these complaints, Defendants retaliated against Plaintiff Navar in violation of 29 U.S.C § 215(a)(3) by passing her over for a vacant position, changing her job title to reflect a demotion, and employing her in a lower ranked position at a lower salary than she deserved.  As a result of these retaliatory acts, Plaintiff Navar was forced to resign.

122.    Because of Defendants' unlawful conduct, Plaintiff Navar is entitled all legal and equitable remedies available under 29 U.S.C. § 216(b), including reinstatement, back pay, liquidated damages, costs and attorneys' fees, and pre- and post-judgment interest.

## FIFTH CLAIM FOR RELIEF
### NY EPA RETALIATION
### N.Y. Lab. Law § 215
### (On Behalf of Plaintiff Allison Navar)

123.    Plaintiff Allison Navar realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

124.    Plaintiff Navar engaged in protected activity under the New York Labor Law by complaining to Defendants about gender discrimination in compensation.

125.    Because of these complaints, Defendants retaliated against Plaintiff Navar in violation of N.Y. Lab. Law § 215 by passing her over for a vacant position, changing her job title to reflect a demotion, and employing her in a lower ranked position at a lower salary than she deserved.  As a result of these retaliatory acts, Plaintiff Navar was forced to resign.

126.    Plaintiff Navar is entitled all legal and equitable remedies available under N.Y. Lab. Law § 215(2)(a), including reinstatement, back pay, liquidated damages, costs and attorneys' fees, and pre- and post-judgment interest.

127.    The Attorney General of New York will be notified and sent a copy of this Complaint as required by N.Y. Lab. Law § 215(b)(2).

## SIXTH CLAIM FOR RELIEF
### NYCHRL RETALIATION
### NYCHRL, N.Y. Admin. Code § 8-107(7)
### (On Behalf of Plaintiff Allison Navar)

128.     Plaintiff Allison Navar realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

129.     Plaintiff Navar engaged in protected activity under the New York Labor Law by complaining to Defendants about gender discrimination in compensation.

130.     Because of these complaints, Defendants retaliated against Plaintiff Navar in violation of N.Y. Admin. Code § 8-107(7) by passing her over for a vacant position, changing her job title to reflect a demotion, and employing her in a lower ranked position at a lower salary than she deserved.  As a result of these retaliatory acts, Plaintiff Navar was forced to resign.

131.    Defendants' above conduct was reasonably likely to deter a person from engaging in protected activity or complaining about pay inequality.

132.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Navar has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

133.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Navar has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff Navar's good name and reputation, lasting embarrassment, and humiliation.

134.     Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff Navar's statutorily-protected rights.

135.     As a result of Defendants' unlawful conduct, Plaintiff Navar is entitled to compensatory damages, including but not limited to damages for economic loss, emotional

distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    An award of damages, according to proof, including, back pay, front pay, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendants;

B.    Designation of this action as a collective action on behalf of the EPA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely EPA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C.    Designation of Plaintiffs as Representatives of the EPA Collective Plaintiff;

D.    Designation of this action as a class action pursuant to F.R.C.P. 23;

E.    Designation of Plaintiffs as Representatives of the NY EPA Class and the NYCHRL Class;

F.    Declaratory and injunctive relief aimed at rectifying all gender discriminatory practices and policies such that members of the respective classes will be treated equally to similarly situated men, as available under applicable laws;

G.    Penalties available under applicable laws;

H.    Costs of action incurred herein, including expert fees;

I.    Attorneys' fees, including fees pursuant to applicable statutes;

J.      Pre-judgment and post-judgment interest, as provided by law; and

K.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.


Dated:  New York, New York
November 7, 2018


Respectfully  submitted,


JOSEPH & KIRSCHENBAUM LLP                    CUTI HECKER WANG LLP

*/s/ D. Maimon Kirschenbaum*                 */s/ Mariann Wang*
D. Maimon Kirschenbaum                       Mariann Wang
Lucas Buzzard                                305 Broadway, Suite 607
32 Broadway, Suite 601                       New York, NY 10007
New York, NY 10004                           Tel: (212) 620-2600
Tel: (212) 688-5640                          Fax: (212) 620-2613
Fax: (212) 688-2548


*Attorneys for Named Plaintiffs, proposed*
*EPA Collective Action Plaintiffs, Proposed*
*NY EPA Class, and proposed NYCHRL*
*Class*