UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLISON NAVAR and CAMILLE ROBERTSON, on
behalf of themselves and others similarly situated,

        Plaintiffs,

        -against-

WALSH CONSTRUCTION COMPANY II, LLC,
SKANSKA USA CIVIL NORTHEAST, INC., and
SKANSKA USA BUILDING, INC.,

        Defendants.

Case No. 18-CV-10476 (LGS)

**DEFENDANTS' COMBINED
MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO
STRIKE OPT-IN PLAINTIFFS**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

I.   RELEVANT PROCEDURAL HISTORY ........................................................ 1

II.  WALSH EMPLOYEE JILL BRAMWELL KNOWINGLY AND
     VOLUNTARILY RELEASED HER CLAIMS AGAINST WALSH.............................. 3

III. SKANSKA BUILDING EMPLOYEE SAMANTHA LITTLE KNOWINGLY
     AND VOLUNTARILY RELEASED HER CLAIMS AGAINST THE
     SKANSKA DEFENDANTS ........................................................................... 4

IV.  SKANSKA BUILDING EMPLOYEE CAROLYN DORSETT OPTED INTO
     THIS SUIT ONLY AFTER PLAINTIFFS SENT HER AN IMPROPER, LATE,
     AND UNAUTHORIZED SECOND NOTICE OF THE SUIT ........................................ 5

LEGAL ARGUMENT ................................................................................................... 6

I.   THE RELEASES WALSH ENTERED INTO WITH ITS EMPLOYEE JILL
     BRAMWELL AND THAT SKANSKA ENTERED INTO WITH ITS
     EMPLOYEE SAMANTHA LITTLE ARE VALID AND PRECLUDE THOSE
     OPT-IN PLAINTIFFS FROM JOINING THIS LAWSUIT ........................................... 6

     A.   Even If Bramwell and Little Were Parties At The Time They Signed The
          Releases, Cheeks Approval Is Not Required For Parties With Knowledge
          of Their Potential Claims Who Sign Standard Severance Agreements ................. 7

     B.   Walsh Employee Jill Bramwell and Skanska Building Employee
          Samantha Little Effectively Released the Claims They Are Asserting in
          this Lawsuit ................................................................................................ 9

II.  SKANSKA EMPLOYEE CAROLYN DORSETT SHOULD BE BARRED FOR
     OPTING-IN ONLY AFTER PLAINTIFFS SENT HER A LATE,
     UNAUTHORIZED NOTICE ........................................................................... 13

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015)..............................................................................7, 8, 9

*Consolidated Edison, Inc. v. Northeastern Utilities*,
249 F. Supp. 2d 387 (S.D.N.Y. 2003), *rev'd in part on other grounds*, 426
F.3d 524 (2d Cir. 2005).........................................................................................10

*Hoffmann v. Horn*,
157 A.D.3d 871, 69 N.Y.S.3d 686 (2018) ............................................................10

*Hui-Wen Chang v. New York City Dep't of Educ.*,
412 F. Supp. 3d 229 (E.D.N.Y. 2019) ....................................................................7

*Jennings v. Cellco P'ship*,
No. 12 Civ. 293, 2012 WL 2568146 (D. Minn. July 2, 2012)..............................15

*Mei Xing Yu v. Hasaki Rest., Inc.*,
944 F.3d 395 (2d Cir. 2019).....................................................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*,
681 F. App'x 64 (2d Cir. 2017) ...............................................................................7

*Morris v. Lettire Const., Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012).....................................................................15

*Saleem v. Corp. Transp. Grp., Ltd.*,
No. 12 CIV. 8450 JMF, 2013 WL 6331874 (S.D.N.Y. Dec. 5, 2013) ....................15

*Souza v. 65 St. Marks Bistro*,
No. 15-CV-327 (JLC), 2015 WL 7271747 (S.D.N.Y. Nov. 6, 2015) .....................13

*States Figueroa v. W.M. Barr & Co., Inc.*,
No. 18-CV-11187, 2020 WL 996473 (S.D.N.Y. Mar. 2, 2020) ..............................15

*Wolinsky v. Scholastic Inc.*,
900 F. Supp. 2d 332 (S.D.N.Y. 2012)................................................................12, 13

## INTRODUCTION

There are only four Opt-In Plaintiffs in this suit.  There are compelling grounds to strike the consents of three of them.  Two are ineligible to join the suit because they knowingly accepted (and deposited) severance payments in exchange for a full and voluntary general release of all claims, including after having consulted with Plaintiffs' counsel *in this very lawsuit*.  One is ineligible because she joined only after receiving a second, unauthorized notice of the suit from Plaintiffs' counsel.[1]  These facts render their purported opt-in notices invalid, and they should not be permitted to join the conditionally certified collective.

## FACTUAL BACKGROUND

### I.   RELEVANT PROCEDURAL HISTORY

Defendants Walsh and the Skanska Defendants[2] have a joint venture, the sole purpose of which is a redevelopment of LaGuardia Airport (the "LaGuardia Project").  Named Plaintiff Allison Navar worked for Walsh at the LaGuardia Project in 2017 and 2018.  Named Plaintiff Camille Robertson worked for Skanska Building from 2016 to 2018.

On November 12, 2018, Plaintiffs filed the Complaint in this matter on behalf of themselves and others they purport to be similarly situated.  Among other claims, Plaintiffs claim violations of the Federal Equal Pay Act ("EPA") on behalf of themselves and a purported collective.  (Compl., ECF No. 1, ¶¶ 96-103.)

---

[1] Moreover, while none of the Opt-In Plaintiffs are similarly situated with the Named Plaintiffs and all of them should be excluded from this matter, this motion is directed only at excluding the Opt-In Plaintiffs who are ineligible to join the suit based on their releases or receipt of late, improper, and unauthorized notice.

[2] As used herein, "Walsh" refers to Defendant Walsh Construction Company II, LLC; "Skanska Civil" means Defendant Skanska USA Civil Northeast, Inc.; "Skanska Building" refers to Defendant Skanska USA Building, Inc.; and the "Skanska Defendants" refers to Skanska Building and Skanska Civil collectively.

All Opt-In Plaintiffs were aware of the lawsuit when it was filed.  Indeed, Opt-Ins Jill Bramwell and Samantha Little were identified by name in Plaintiffs' complaint.  (ECF No. 1, ¶¶ 72, 75, 88-93, and Plaintiffs claimed in their Complaint that Little had been paid unfairly.  (*Id.*, ¶¶ 88-93.)  The same day as they filed the Complaint, named Plaintiffs ALSO went to the press with their claims, telling the New York Post about their complaint.  *See* "LaGuardia Airport's $4B Overhaul Project Is Paying Women Less: Suit," *New York Post*, Nov. 12, 2018, available at https://nypost.com/2018/11/12/laguardia-airports-4b-overhaul-project-is-paying-women-less-suit/.  In response, workers at the LaGuardia Project received notice of the suit in an email sent to all workers on November 14, 2018.  (*See* Declaration of Mark Konkel, Esq., Exhibit. A.)

After some discovery and motion practice had taken place in this matter, on May 7, 2020, this Court conditionally certified an EPA collective.  (ECF No. 107.)  The Court noted that Plaintiffs showed, "by a small margin," that they were "similarly situated to the proposed opt-in plaintiffs."  (Konkel Decl., Ex. B, May 7, 2020 Hr. Tr. 7:8-9; ECF No. 107.)

The Court then ordered plaintiffs to "complete dissemination of notice to potential collective members" **by July 23, 2020**.  (ECF No. 118 (emphasis added).)  Plaintiffs issued an initial round of those notices in July 2020.  (ECF No. 117.)  Unsatisfied with the low response rate, however, Plaintiffs then issued a *second* round of late and unauthorized notices to nearly all of the potential collective members on August 26, 2020—well after this Court's deadline to send notices.  (Konkel Decl., Exs. C, D.)  Those late and unauthorized notices falsely indicated that ***"[t]he Court has ordered Notice to you."***  (Konkel Decl., Ex. D (emphasis added).)  Of course, this Court did not order or permit a second round of notices.   Plaintiffs did not request or receive permission from the Court to issue the second round of notices, and Plaintiffs did not notify Defendants or the Court they intended to or had issued the second, late, round of notices.

Despite Plaintiffs' inappropriate and unauthorized notices, just five people initially[3] consented to become Opt-In Plaintiffs (two Walsh employees, two Skanska Building employees, and one Skanska Civil employee).  Three of those four Opt-Ins cannot be a part of the collective in this matter, regardless of what any additional discovery would show.  The only current Walsh Opt-In, Jill Bramwell, signed a valid severance agreement and general release of claims precluding her from joining this suit.  She did so in consultation with her counsel in this action on the very same day she consented to join the suit, on September 14, 2020.  Likewise, Skanska Building's Samantha Little signed a valid and binding severance agreement and general release. Skanska Civil's Carolyn Dorsett only purported to opt in after Plaintiffs issued their second, improper, late, and unauthorized notice. Thus, all of them—Bramwell, Little, and Dorsett— should be excluded from the collective.

On October 30, 2020, the Court stayed discovery on those potential Opt-In Plaintiffs until it could decide the issues raised in this motion.  (ECF No. 139.)  For the reasons discussed herein, the Court should exclude these Opt-In Plaintiffs, as they cannot properly join this matter, and excluding them at this stage will focus and narrow the issues on decertification to the question of whether the opt-ins are "similarly situated," help preserve judicial and party resources and avoid the parties engaging in costly, unnecessary discovery, including documentary discovery and depositions of those who could never be a part of this lawsuit.

## II.   WALSH EMPLOYEE JILL BRAMWELL KNOWINGLY AND VOLUNTARILY RELEASED HER CLAIMS AGAINST WALSH.

Jill Bramwell is the only remaining Walsh employee who has opted in to this action. She worked for Walsh at the LaGuardia Project in several positions from 2018 to 2020, most recently as Senior Project Counsel.  (*See* Konkel Decl., Ex. E.)  As the LaGuardia Project has begun to

---

[3] Five individuals filed consents to opt-in as a plaintiff in this matter, but one, former Walsh employee Vivian Nino, has since withdrawn her consent.

slow down, Walsh has reduced its workforce.  In connection with that reduction, Walsh, based on its individual HR practices, has offered employees subject to layoff—including Bramwell— its standard severance packages.  (Konkel Decl., ¶8.)   Those severance packages include standard releases of potential claims.  (Konkel Decl., ¶¶8-9.)  The severance agreements also inform the recipients that they have the "right to review all aspects of this Agreement with an attorney of your choice."  (Konkel Decl., ¶9.)

On September 7, 2020, counsel for Plaintiffs in this matter notified counsel for Defendants that they had received "reports . . . over the course of the summer," that "Defendants have provided potential members of the collective with severance agreements containing releases of claims, including the claims in this lawsuit."  (Konkel Decl., Ex. F.)  The parties met and conferred by phone regarding that issue and others on September 10, 2020, and September 21, 2020.  (Konkel Decl., ¶11.) Walsh learned in the course of these discussions that Ms. Bramwell had contacted counsel for Plaintiffs to discuss the release Walsh had presented to her.  (Konkel Decl., ¶11.) At that point, however, Ms. Bramwell—herself an attorney—had not signed her severance agreement with Walsh, presumably because she was waiting for advice on whether to sign it from Plaintiff's counsel in this lawsuit.  (Konkel Decl., ¶12.)  It was only after these discussions between counsel, and after she had been advised by Plaintiffs' counsel to sign her release, that she signed the full release of claims on September 14, 2020—the same day she also executed an opt-in form and provided it to Plaintiffs' counsel.  (Konkel Decl., ¶¶13-14, Ex. E; ECF No. 127.)

As set forth more fully below, the point of court approval under typical FLSA settlement procedures—which have never been applied to an EPA collective or class action—is to prevent one-sided, unknowing waivers of claims by putative class members who may or may not

understand what they are doing.  (*See infra* I.A.) That rationale, even if it does apply in this EPA case, obviously cannot apply to Ms. Bramwell.  Ms. Bramwell is an attorney, accepted (and deposited) payments of severance in exchange for a full release and waiver of claims, and did so having specifically consulted *with the attorneys in this suit who also filed her opt-in form*.  She knew what she was doing; her attorneys apparently evaluated the risk that she might be excluded as an opt-in and advised her to take it; and she should not be permitted now to have her cake and eat it, too.

Ms. Bramwell is the only Walsh employee who has opted-in to this suit.  Because the Court should exclude her, there is no collective in this suit as to Walsh at all.

## III. SKANSKA BUILDING EMPLOYEE SAMANTHA LITTLE KNOWINGLY AND VOLUNTARILY RELEASED HER CLAIMS AGAINST THE SKANSKA DEFENDANTS.

Samantha Little worked for Skanska Building at the LaGuardia Project from 2018 through the spring of 2020.  Like Walsh, the Skanska Defendants have reduced their workforces at the LaGuardia Project as work on that project has started dwindling and winding down.  In the spring of 2020, Skanska Building notified Little and other employees that their employment would end soon.  Skanska Building presented Little and the other employees with a severance offer in exchange for them signing a general release of claims.  Under Little's severance agreement, Little would receive, among other things, a sizeable cash payment and a month of benefits.  (*See* Declaration of Ben Sandahl, Esq., Ex. G.)   In exchange, Little promised to "knowingly and voluntarily" release the Skanska Defendants from all potential liabilities, including equal pay laws and claims related to wages, commissions, bonuses, and "other compensation or payments of any nature." (*See* Sandahl Decl., Ex. G.)  The agreement further notified Little of her rights to review the agreement with an attorney and provided her 21 days to consider whether to sign it.  (*Id.*)   On May 29, 2020, Little—*while aware of this pending*

*litigation by virtue of the Skanska Defendants' communications concerning this suit*—accepted her severance package and released the Skanska Defendants from all claims, including this one.  (*Id.*)

On July 29, 2020, counsel for the Skanska Defendants notified counsel for Plaintiffs that Little and others had signed releases of their claims.  (Sandahl Decl., Ex. H.)  Despite her knowing release of claims, and despite Plaintiffs' knowledge of that release, Little purported to consent to opt-in to this matter on August 24, 2020.  (ECF No. 125.)

## IV.     SKANSKA BUILDING EMPLOYEE CAROLYN DORSETT OPTED INTO THIS SUIT ONLY AFTER PLAINTIFFS SENT HER AN IMPROPER, LATE, AND UNAUTHORIZED SECOND NOTICE OF THE SUIT.

Carolyn Dorsett has worked for the Skanska Defendants since 2008.  She remains a current employee of Skanska Building, which assigned Dorsett to work at the LaGuardia Project beginning in 2016.  (*See, e.g.*, Dorsett Consent to Join, ECF No. 126.)  According to Plaintiffs, Plaintiffs sent a notice electronically to Dorsett notifying her of her potential ability to join the collective in this matter in July 2020.  (ECF No. 117.)  Like most of the other potential Opt-In Plaintiffs, Dorsett did not file a consent to join this suit after receiving her initial, proper, and Court-authorized notice.  Then, over a month after the deadline to send notice set by this Court, on August 26, 2020, without Court approval or knowledge, Plaintiffs mailed a *second* round of late and unauthorized notices to nearly all of the potential collective members, including Ms. Dorsett.   (Konkel Decl., Exs. C, D; Sandahl Decl., I.)   Only after receiving that late, unauthorized notice did Dorsett join this matter, just a few days after she received it, on September 7, 2020.  (ECF No. 126.)

The Court should exclude Ms. Bramwell from this suit because she signed a valid, enforceable general release of claims with Walsh.  The Court should exclude Little from this suit because she likewise signed a valid, enforceable general release of claims with the Skanska

Defendants.  The Court should exclude Dorsett from this suit because the reasonable inference

from her delay in opting into this matter as a plaintiff is that she only joined as a result of

Plaintiffs' improper, late, and unauthorized actions.

**LEGAL ARGUMENT**

I.     **THE RELEASES WALSH ENTERED INTO WITH ITS EMPLOYEE JILL
       BRAMWELL AND THAT SKANSKA ENTERED INTO WITH ITS EMPLOYEE
       SAMANTHA LITTLE ARE VALID AND PRECLUDE THOSE OPT-IN
       PLAINTIFFS FROM JOINING THIS LAWSUIT.**

It is axiomatic that parties who enter into releases cannot maintain lawsuits against the

parties they have released.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 681

F. App'x 64, 66 (2d Cir. 2017) ("Under New York law, a valid release constitutes a complete bar

to an action on a claim which is the subject of the release.") (citation and internal punctuation

omitted).  Releases are valid where they are "clear and unambiguous,"[4] and the parties enter into

them "knowingly and voluntarily."  *Id.* (citation omitted).  The terms of each release are plain,

and both Bramwell and Little entered into their respective releases knowingly and voluntarily

with no evidence of coercion by Walsh or Skanska.  As a result, the Court should preclude Jill

Bramwell and Samantha Little from pursuing their claims in this matter.

A.     **Even If Bramwell and Little Were Parties At The Time They Signed The
       Releases, *Cheeks* Approval Is Not Required For Parties With Knowledge of
       Their Potential Claims Who Sign Standard Severance Agreements.**

*Gorczyca v. NVR, Inc.*, is a case similar to this one that illuminates what knowing and

voluntary releases are in the context of FLSA claims.  No. 13-CV-6315L, 2017 WL 11435971

(W.D.N.Y. July 13, 2017).  In *Gorczyca*, the plaintiff asserted that his employer had failed to pay

---

[4] Plaintiffs have never suggested that any release at issue in this matter was unclear or
ambiguous.  Nor could they, as broad releases of claims "arising from [a plaintiff's] employment
or termination" like those at issue here are sufficiently clear and unambiguous to be enforceable.
*Merrill Lynch*, 681 F. App'x at 66; *see also Hui-Wen Chang v. New York City Dep't of Educ.*,
412 F. Supp. 3d 229, 243-44 (E.D.N.Y. 2019) ("When the release contains general language, 'the
release is to be construed most strongly against the releasor.'").

7

him overtime in accord with the FLSA and the New York Labor Law.  *Id.* at *1.  The plaintiff

had, however, also signed a broad general release "upon the termination of his employment."  *Id.*

The defendant employer had advised the plaintiff to consult with counsel and gave him 21 days

to review the release with his counsel prior to signing.  *Id.* at *2-3.  At the time the plaintiff

signed his release, a co-worker of his had already filed suit against the employer for unpaid

overtime under the FLSA.  *Id.* at *2.  Despite his release, the plaintiff opted-in to his co-worker's

action.  *Id.*  That action was decertified, so the plaintiff tried to revive his own FLSA claims in a

separate lawsuit.  *Id.*  The court held that the plaintiff's release barred him from bringing claims

against the employer.  *Id.* at *3.  The court reasoned that the plaintiff had entered into the release

"knowingly, voluntarily, and after ample opportunity to consult with his counsel."  *Id.*  At the

time he signed the release, he was "fully aware of the factual and legal grounds for his" claims,

as he was familiar with his co-worker's suit.  *Id.* at *2.  Further, there was no unequal bargaining

power in that case because the plaintiff was represented by counsel and the employer had given

him ample time to review the release before signing.  *Id.* *3.  As a result of the plaintiff's

knowing and voluntary release of claims, the court barred him from bringing suit against his

employer.  *Id.*

As shown above, both Bramwell and Little were put on notice of their potential claims

against the Defendants in this action via the November 14, 2018 email communication that went

out to all persons working on the LaGuardia Project about this very lawsuit.  In spite of cases

like *Gorczyka*, Defendants anticipate that Plaintiffs will attempt to invalidate the releases in this

matter claiming that EPA claims cannot be released absent approval by the Department of Labor

or a court (which has not been granted here) because the EPA is part of the Fair Labor Standards Act and, hence, a *Cheeks* review is required to effectuate a valid release of such claims.[5]

***No cases in the Second Circuit (including lower courts), however, have required court or Department of Labor approval to release EPA claims***.  If Plaintiffs were to ask this Court to so rule, this Court would be making new law and contradicting other courts in the Second Circuit which have <u>enforced</u> the waiver and release of EPA claims as part of standard severance agreements with no *Cheeks* review required.

For example, recent cases like *Gorczyka*, in 2017 demonstrate that court approval of standard separation agreements and releases is unnecessary where plaintiffs are aware of their possible claims at the time they signed a release.  2017 WL 11435971. Although the court in *Gorczyka* recognized that an "additional level of supervision," such as court approval, is ordinarily required for releases of FLSA claims, *id.* at *2, such "additional safeguards" were unnecessary in that case. *Id.* at *3.  Because the plaintiff was aware of the factual and legal grounds for his claims, and there was no unequal bargaining power, court approval of the release was unnecessary.  *Id.*; *see also Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 403 (2d Cir. 2019) (distinguishing *Cheeks*, and finding that court approval was unnecessary for a release of claims as part of a settlement under Federal Rule of Civil Procedure 68).

As noted, Jill Bramwell knowingly and voluntarily released her claims against Walsh, and Samantha Little knowingly and voluntarily released her claims against the Skanska Defendants.  The Court should thus enforce their releases and dismiss them from this suit.

---

[5] *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 201 (2d Cir. 2015).  *Cheeks*, which did not involve a pre-litigation release, was limited to FLSA claims for unpaid minimum wages or overtime - not EPA claims like Plaintiffs assert here.

**B.**   **Walsh Employee Jill Bramwell and Skanska Building Employee Samantha Little Effectively Released the Claims They Are Asserting in this Lawsuit.**

**1.**   **The Facts Surrounding Jill Bramwell's Release Demonstrate it Is Enforceable.**

Jill Bramwell's release of Walsh is valid because she knowingly and voluntarily entered into it on the advice of the attorneys representing Plaintiffs.  Plaintiff identified Bramwell by name in the complaint, Defendants provided her notice of the lawsuit in November 2018, and Plaintiffs themselves publicized their suit.  There is no dispute that Ms. Bramwell was aware of the claims Plaintiffs were making in this case long before she signed her release.  What is more, on or before September 7, 2020, Bramwell (who is herself a lawyer) informed counsel for Plaintiffs that Walsh had presented a release to her.  (Konkel Decl, ¶¶11-12; Ex. F.)  That release encouraged Bramwell to consult an attorney and gave her plenty of time to consider whether to sign the release—and she did so.  Then, on September 14, 2020, Bramwell signed the release, and the same day opted-in as a plaintiff to this matter.  (Konkel Decl., Ex. E; ECF No. 127.)  The only logical inference from this sequence of events is that Bramwell signed her release and opted-in to this matter with the advice and consent of Plaintiffs' counsel.[6]

---

[6] Bramwell only signed a release agreement with Walsh because she only worked for Walsh, not any of the Skanska Defendants.  Bramwell cannot maintain a suit against the Skanska Defendants because they were not her employer.   If, however, the Court were to consider Walsh and the Skanska Defendants joint employers of Bramwell, her release would also be valid as to the Skanska Defendants. *See, e.g.*, *Hoffmann v. Horn*, 157 A.D.3d 871, 874, 69 N.Y.S.3d 686, 688 (2018) (recognizing that severance agreements are valid where parties are "actually joint tortfeasors"); *Consolidated Edison, Inc. v. Northeastern Utilities*, 249 F. Supp. 2d 387, 418 (S.D.N.Y. 2003), *rev'd in part on other grounds*, 426 F.3d 524 (2d Cir. 2005) (state law applies to determining the scope and validity of a release agreement). The same principal applies to Little and her release with the Skanska Defendants—a release of Walsh is unnecessary because she never worked for Walsh, or it would be effective as to Walsh as her joint employer.

### 2.     The Facts Surrounding Samantha Little's Release Demonstrate it Is Enforceable.

Similarly, Little knowingly and voluntarily entered into her release with the Skanska Defendants.   Plaintiffs identified Little by name in their Complaint as a person who was allegedly paid unfairly.   Plaintiffs publicized their suit in the press, and ***Defendants notified Little and others of the suit when it was filed***.   Hence, Little knew about this suit in 2018, almost two years before she signed her release.

Then, in exchange for monetary and other benefits, Little promised to "knowingly and voluntarily" release the Skanska Defendants from all potential liabilities, and the Skanska Defendants notified her of her right to have her counsel review the agreement and gave her 21 days to do so.  (*See* Sandahl Decl., Ex. G.)

### 3.     The *Gorczyca* Case Illustrates that Both Bramwell's and Little's Releases are Enforceable.

The facts and circumstances in this case are even more compelling than *Gorczyca* to show that Bramwell and Little entered into their releases knowingly and voluntarily.  Like the plaintiff in *Gorczyca*, Bramwell was aware of the factual and legal grounds for her claims, as she was aware of the allegations in this case.  2017 WL 11435971, at *2.  Similarly, as in *Gorczyca*, there was no unequal bargaining power with Bramwell, as she had ample time to review her agreement and had the opportunity to seek counsel.  *Id.* at *3.  But unlike the plaintiff in *Gorczyca*, the evidence here shows that Bramwell in fact sought legal advice from Plaintiffs' counsel in this matter.  They could only have counseled her to sign the release and then join the lawsuit in spite of that release.  Bramwell not only knowingly and voluntarily entered into her release with Walsh, but she did so with the knowledge and consent of Plaintiffs' counsel.  The timing and circumstances surrounding Bramwell's release compel the conclusion that she

entered into it knowingly and voluntarily, especially when one considers that Bramwell herself is

a lawyer.

Similarly, like the plaintiff in *Gorczyca*, Little was aware of the factual and legal grounds

for her claims, and just like that plaintiff, Little had ample opportunity to consult with counsel

about the release.  2017 WL 11435971, at *2.  Hence, just like the plaintiff in *Gorczyca*, Little

signed her release knowingly and voluntarily releasing the claims in this case and she should be

dismissed from this case.  *Id.*

### 4.   Though Court Approval Is not Needed for Bramwell's or Little's Releases, it Would Be Appropriate.

As noted above, court approval is not needed to find Bramwell's or Little's releases valid.

Regardless, such approval would be appropriate in this case.  Courts approve releases where, as

here, there is a bona fide dispute about the compensation owed, and the release is fair and

reasonable.  *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).  There is

no doubt there is a bona fide dispute about the compensation the Defendants owe to Plaintiffs, as

there is an ongoing lawsuit.  *See Gorczyca*, 2017 WL 11435971, at *2 (finding that there

"manifestly existed a bona fide dispute concerning the sufficiency of plaintiff's prior

compensation" at the time he signed his release, as there was an ongoing lawsuit on that issue at

that point).  Similarly, Bramwell's and Little's releases are fair and reasonable.  Courts

examining the fairness of releases examine several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the
> settlement will enable the parties to avoid anticipated burdens and expenses in
> establishing their respective claims and defenses"; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether "the settlement agreement is the
> product of arm's-length bargaining between experienced counsel"; and (5) the
> possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335-36.  In addition,

> [g]iven the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'"

*Id.*

These factors weigh in favor of court approval of the releases. For example, Plaintiff will not be able to recover significant damages. According to Plaintiffs, Bramwell earned only $5,000 less than her purported male counterpart. (Pl.'s Mem. Cond. Cert., at 11, ECF No. 87.) That amount is not significantly different from the amount Bramwell received as severance. (Konkel Decl., Ex. E.) Likewise, Little received approximately as much in severance as the difference between what she alleges she earned compared to a purported male counterpart. (*Compare* Sandahl Decl., Ex. G *with* Pls.' Mem. Cond. Cert. (ECF No. 87, unredacted) at 16.)

Moreover, Bramwell's release was undoubtedly the "product of arm's-length bargaining between experienced counsel," *Wolinsky*, 900 F. Supp. 2d at 335, and thus not susceptible to fraud or collusion, as Bramwell was in contact with Plaintiffs' counsel regarding the release prior to signing it. Similarly, the Skanska Defendants gave Little ample time and notice to review the agreement with counsel, so there is no danger of collusion. *See also Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015) (approving broad release signed in connection with FLSA settlement where employee was aware of potential claims at the time of signing the release). Further, there is no history of FLSA non-compliance by Walsh or the Skanska Defendants, the record is "mature" enough to enforce the releases, and enforcing the release will enable the parties to focus on discovery in this matter related to proper

parties.  The Court should thus enforce Bramwell's and Little's releases regardless of whether it

determines that approval is required.[7]

## II.     SKANSKA EMPLOYEE CAROLYN DORSETT SHOULD BE BARRED FOR OPTING-IN ONLY AFTER PLAINTIFFS SENT HER A LATE, UNAUTHORIZED NOTICE.

The Court should also reject the consent of Skanska Building employee Carolyn Dorsett,

because it was improperly obtained.  The Court ordered Plaintiffs to send notices to potential

opt-in Plaintiffs by *July 23, 2020*.  (ECF No. 118.)  Unlike other courts and other rulings on class

certification, this Court made no provision for second notices, or for notices to be issued after

that deadline, and certainly no such notices were authorized.  Plaintiffs did not seek the Court's

permission to send a second wave of notices *after the deadline*, nor did they notify Defendants

that they intended to send out a second wave of notices.  Yet, on August 26, 2020—more than a

month after the Court's deadline—Plaintiffs' counsel mailed second notices to almost all of the

potential opt-in plaintiffs, including Dorsett, falsely claiming that "[t]he Court has ordered

Notice to you."

The Court should strike Dorsett's consent because she did not attempt to join the suit

until several days after she likely received the improper second notice via regular U.S. mail (i.e.,

"snail mail") that she joined the suit.  Plaintiffs' counsel argued to Defendants during meet and

confers that if the notices were improper (and they were), counsel should face the consequences

for those actions, not Dorsett.  Plaintiffs miss the point.  If Plaintiffs had requested permission to

issue a second round of notices in this case, Defendants would have had the opportunity to

oppose that request, and even if unsuccessful opposing the request, Defendants could have

---

[7] Plaintiffs have indicated that the Court can only enforce a release on summary judgment.  ECF No. 136.)  As Defendants have noted, however, no additional discovery is needed to enforce Bramwell's (or Little's) release, and the Court can enforce the releases on the current record evidence.  (*Id.*)

weighed in on the language of the notice in the second round of mailing to mitigate any prejudice.  For example, Defendants could have insisted that the second round of notice "contain a disclaimer that the court does not encourage or discourage participation in the case."  *Jennings v. Cellco P'ship*, No. 12 Civ. 293 (SRN/TNL), 2012 WL 2568146, at *6 (D. Minn. July 2, 2012).  While some courts have authorized the issuance of reminder notices, others have recognized that such notices are "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit."  *Morris v. Lettire Const., Corp*., 896 F. Supp. 2d 265, 274 (S.D.N.Y. 2012) (*quoting Smallwood v. Illinois Bell Tel. Co*., 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010) (identifying risks of sending out second notices)).  As it is, Plaintiffs simply issued a second round of unauthorized notices, claiming they were authorized, and as a result, another plaintiff is attempting to opt-in to this matter.  Given that Dorsett did not opt-in during the six weeks following her receipt of the first, *authorized* notice, it is reasonable to conclude that it was her receipt of the second, <u>unauthorized</u> notice that prompted her to try opting in several days later.

The Court has the authority to strike Dorsett as a plaintiff for Plaintiffs' misconduct, as it has broad discretion in fashioning sanctions for missing court-ordered deadlines.  *See, e.g.*, *States Figueroa v. W.M. Barr & Co., Inc.*, No. 18-CV-11187 (JGK/KHP), 2020 WL 996473, at *4 (S.D.N.Y. Mar. 2, 2020).  Striking the opt-ins who received late, unauthorized notices would be the appropriate sanction here, as courts routinely strike opt-in consents where the opt-in plaintiffs respond to the notice in an untimely manner.  *See, e.g.*, *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 CIV. 8450 JMF, 2013 WL 6331874, at *1-3 (S.D.N.Y. Dec. 5, 2013) (striking opt-in FLSA plaintiffs who responded to a notice after a court deadline where there was no good cause for their tardiness and the opt-ins missed the deadlines by as little as one week).  Should she truly wish to pursue claims against Defendants, as a current employee, Dorsett is not time-barred and

15

can file a separate suit.  However, Plaintiffs' issuance of second, late, and unauthorized notices improperly implied that the Court was ***encouraging*** potential opt-ins such as Dorsett to join this lawsuit. For this reason and the others set forth above, Dorsett's consent, which is the only opt-in consent resulting from Plaintiffs' second, improper notice, should be stricken.

## CONCLUSION

For the reasons set forth herein, the Court should strike the consents of three of the four remaining Opt-In Plaintiffs in this suit.

Dated: November 12, 2020

KELLEY DRYE & WARREN LLP          LITTLER MENDELSON, P.C.

*/s/ Mark A. Konkel*                              */s/ Benjamin D. Sandahl*
   Mark A. Konkel                                   Amber M. Spataro (admitted *pro hac vice*)
   Nidhi Srivastava                                 Jacqueline E. Kalk (admitted *pro hac vice*)
   101 Park Avenue                                  Benjamin D. Sandahl (admitted *pro hac vice*)
   New York, New York 10178                         One Newark Center, 8th Floor
   mkonkel@kelleydrye.com                           Newark, New Jersey 07102
   nsrivastava@kelleydrye.com                       aspataro@littler.com
   Phone: (212) 808-7800                            jkalk@littler.com
   Facsimile: (212) 808-7898                        bsandahl@littler.com
   *Attorneys for Defendant Walsh*                  Phone: (973) 848-4700
   *Construction Company II, LLC*                   Facsimile: (973) 643-5626
                                                    *Attorneys for Defendants Skanska USA Civil*
                                                    *Northeast Inc. & Skanska USA Building Inc.*

16